IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Gladys Ewing, <br><br> Plaintiff, <br><br> v. <br><br> Denis R. McDonough, Secretary, Department of Veterans Affairs,[1] <br><br> Defendant. | Case No. 19 C 649 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gladys Ewing filed this lawsuit against her employer, Department of Veterans Affairs, alleging discrimination based on age and race, and retaliation. At the end of discovery, Defendant Denis R. McDonough, Secretary, Department of Veterans Affairs, moved for summary judgment on all of Plaintiff's claims. For the reasons discussed below, the motion [71] is denied.

**BACKGROUND**

The facts are taken from the parties' Local Rule 56.1 statements and undisputed except where noted. Plaintiff is an African American woman who was born in 1966. She began her employment at the Hines VA Medical Center in 1990 as a wage grade food service worker. In 2002, she began working in the Human Resources (HR) Department at Hines where she is currently employed as a Human Resources Specialist (Recruitment) (GS-12).

Around March 2017, according to an organizational chart submitted by Plaintiff, Stuart Souders held the position of Human Resources Officer (GS-14) for the HR Department. Jodi Yenerall, Supervisory HR Specialist (Recruitment) (GS-13) and Abel Hernandez, Supervisory HR

---

[1] Defendant Denis R. McDonough, as Secretary for the U.S. Department of Veterans Affairs, is substituted for Robert Wilkie as Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d). The Clerk's office is directed to update the docket to reflect the substitution.

1

Specialist (ER/LR) (GS-13), were supervisors who reported directly to Souders. The HR Department was also staffed with a number of HR Specialists and HR Assistants in specific areas such as Recruitment, Benefits, Employee Relations/Labor Relations, and Workers' Compensation, whose pay grades ranged from GS-6 to GS-12. Plaintiff had started off in HR in a clerk position that was later converted to an HR Assistant (GS-6) job. In 2014, she was promoted to HR Specialist (Benefits) (GS-9), which is the position she held at the time of the events in question.

## I. Plaintiff's Non-Selection for Promotion

### A. HR Specialist

In June 2017, Plaintiff applied for a promotion to HR Specialist in recruitment. Defendant contends that Plaintiff had been working primarily in employee benefits and had little experience with recruitment. Plaintiff disputes this contention and points to her extensive familiarity with and training in all aspects of VA HR Operations. Plaintiff was selected for an interview based on her written application which demonstrated that she had the knowledge, skills, and abilities ("KSA") for the position. The interview panel was comprised of Hernandez, Irene Balas, HR Specialist (Recruitment), and Estella Guerrero, HR Specialist (ER/LR), with Yenerall listed as the selecting official.

According to Defendant, promotions to HR specialist roles at the VR are determined as follows. Interviews are conducted by a panel of three people using a set of "performance-based" questions. Each panel member scores the candidate responses from one to five (with five being the best). The selecting official then meets with the panel members, reviews the scoring, and selects whoever scores the highest overall, irrespective of seniority in the office. According to Plaintiff, who vehemently disagrees with that description of the process, the Hines Merit Promotion Policy provides that interviews are not required, and if they are conducted, there is no standardized

2

method for scoring and the highest scorer is not always selected. Plaintiff insists that selecting officials can choose candidates based solely on screening and scoring applications without undertaking interviews, and that experience, not subjective interview scores, is the most significant consideration.

Plaintiff was not selected for the HR Specialist role. Rather, Jason May, a younger white male with only three years of experience in the HR Department was chosen. Defendant maintains that May performed better on his interview questions and received a higher score than Plaintiff; thus, he was chosen because the VA relies heavily on performance-based interviews in promotions across the agency. Defendant further points out that May had attended an interview preparation workshop run by Yenerall, as head of Recruitment and Placement, which Plaintiff had declined to attend.

But Plaintiff avers that she was never invited to participate in those workshops, and that training was for lower-level HR Assistants (GS-6) anyway. Plaintiff further points to declarations from other VA employees about statements made by Souder and Yenerall.[2] One declares that Yenerall commented the promotion was May's "to lose," suggesting that he was pre-selected and coached for the role (Dkt. 84-8 at ¶ 5). Another declares that Souders told him "he did not want to promote [Plaintiff] even though she had the highest score and he picked Jason May instead." (Dkt. 84-9 at ¶16). Plaintiff herself avers that after the interview, Souders, who was present with

---

[2] Defendant challenges many of the statements in the affidavits Plaintiff submitted as hearsay. However, the Court does not agree that this information is wholly immaterial at the summary judgment stage. Statements made by Souders and Yenerall are admissible as declarations from a party opponent because they were made by agents or employees of Defendant within the scope of their employment relationship and while it existed. Federal Rule of Evidence 801(d)(2)(D). While the affidavits themselves are not admissible at trial, the relevant question at this juncture is whether the content of the evidence would be admissible, not the form. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994) ("the evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial"). Therefore, to the extent the statements contained in the affidavits relay declarations of a party opponent, they are admissible for purposes of summary judgment and properly considered by the Court.

Yenerall, told her that she did well at the interview and was number 1 overall, but he was not going to select her. (Dkt. 84-2 at ¶45). In addition, Plaintiff says that when she complained to Yenerall about May receiving the promotion, Yenerall responded that she—Yenerall—merely does what Souders tells her to do. (*Id.* ¶¶ 51, 74).

Defendant submitted interview sheets indicating that Plaintiff received a score of 62 out of 75 points, while May received a score of 71 out of 75 points. (Dkt. 73-5 at 2). However, Plaintiff provided EEO affidavits from both Balas and Hernandez, two of the interview panel members, confirming those respective scores, but stating that Plaintiff's final ranking was 1st and May's was 5th. (Dkt. 84-6 at ¶19; Dkt. 84-17 at ¶19).

### B. Supervisory HR Specialist

In November 2017, Plaintiff applied for a vacant Supervisory HR Specialist position and was selected for an interview. This time, though, Souders, Yenerall, and Hernandez comprised the interview panel, with Souders listed as the selecting official. Once again, Plaintiff was not chosen. Rather, Camisha Torey-Lyman, a younger African American woman with less than a year of experience in the VA HR department was picked. As before, Defendant maintains that the selection was based primarily on performance-based interview questions, and Torey-Lyman outscored Plaintiff.

Plaintiff challenges Torey-Lyman's selection as procedurally improper and in violation of several internal VA hiring policies. For example, Souders was both on the interview panel and the selecting official for the position, which is allowed in limited circumstances. (Dkt. 84-7 at 10). Plaintiff also questions Defendant's emphasis on interview scores given that the VA Merit Promotion Plan Memorandum states that interviews are not required when selecting candidates for promotion. (Dkt. 84-7 at 12). Finally, Plaintiff declared that on at least one occasion she served

4

"on an interview panel for Shawn Scheirer, a younger white male, who was selected for the position of HR Specialist, even though he was not the highest scorer in the interviews." (Dkt. 84-2 at ¶ 132).[3]

## II. Plaintiff is Promoted at a Lower Grade

In May 2018, when another HR Specialist position opened up, Plaintiff applied, performed well in her interview, and was offered the job in June 2018. The interview panel consisted of Balas, Hernandez, and Lavinia Crockett, a HR Specialist (Recruitment). Plaintiff states that following the interviews, Souders told her she had been selected for the promotion, but not by him, as he was leaving Hines. Instead, Rafael Lara, Recruiting and Staffing Supervisor, chose her. But when Lara met with Plaintiff, he offered her the job at a GS-9, her current level. (Dkt. 84-14).

Lara explained in an affidavit that the position "was graded GS 9/12, meaning the selected candidate would generally enter the position at Grade GS-9 and then be eligible to advance in grade until maxing out at GS-12." (Dkt. 73-4 at ¶ 3). Lara believes Plaintiff may have been rated at a GS 11/12 because of her years of service in the HR department, but that was not reflective of her abilities in the position she applied for, which is why he started her as a GS-9. (*Id.*) Plaintiff claims that Lara told her she would be elevated to GS-11 within 90 days, but after she lodged complaints about her starting pay grade, Lara withheld the pay increase for several more months. Defendant disputes these statements. (Dkt 90-1 at ¶ 36).[4]

---

[3] Defendant challenges the admissibility of this evidence, stating that Plaintiff does not have "personal knowledge about why Scheirer was selected." (Dkt. 90-1 at ¶ 13). However, Plaintiff never claimed to know why Scheirer was selected, only that he did not receive the highest score on his performance-based interview, which Plaintiff would have learned by sitting on the interview panel.

[4] The Court does not consider the slur allegedly used by Lara in deciding this motion because the Hines employee who allegedly heard it, Deontae Smith, has not provided an affidavit. (Dkt. 84-2 at ¶ 108). As such, although the statement from Lara may be an opposing party declaration, the statement from Deontae Smith to Plaintiff is hearsay. To get this testimony in at trial, Plaintiff would have to elicit the information directly from Smith.

Plaintiff was promoted to GS-11 in December 2018, after six months, and then promoted to GS-12 in December 2019, a year later. However, Plaintiff argues that the postponement of her two pay grade increases (from GS-9 to GS-11 coming in December 2018 instead of at the time of her promotion, and from GS-11 to GS-12 due to the lag in being increased to GS-11) cost her thousands of dollars.

### III. Plaintiff's EEO Complaints

During her time at Hines, Plaintiff has also lodged several Equal Employment Opportunity ("EEO") complaints, starting as early as 2011. (Dkt. 84-5). Relevant here, in February 2017, Plaintiff had filed an EEO complaint against Souders and attended EEO mediations of her complaints where Souders was present. Plaintiff believes that Yenerall, Souders, Lara, Hernandez, Guerrero, and Balas were all aware of her EEO activity prior to her June 2017 application and interview for the position that ultimately went to May.

After Plaintiff was not selected for the HR Specialist role, around August 2017, she filed an EEO complaint against Souders asserting discriminatory non-selection (based on race, sex, age, and retaliation). (Dkt. 84-12). Then, in December 2017 when Plaintiff was notified that Torey-Lyman had been chosen for the Supervisory HR Specialist position, Plaintiff amended her EEO Complaint to include non-selection for that position as well. (Dkt. 84-13).

Finally, Plaintiff filed internal and EEO complaints about not being started as a GS-11 after she was finally promoted. Neither May nor Torey-Lyman had engaged in any protected EEO activity at the time of their selections for promotion.

Plaintiff sued the VA for age discrimination under the Age Discrimination Employment Act ("ADEA") (Count I), race discrimination under Title VII of the Civil Rights Act of 1964

6

(Count II), and retaliation (Count III).[5] Defendant seeks summary judgment in its favor. That motion is fully briefed and ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court must resolve all disputed facts and draw all reasonable inferences in favor of the non-movant. *Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the (non-movant's) position will be insufficient; there must be evidence on which the jury could reasonably find for the (non-movant)." *Anderson,* 477 U.S. at 252.

---

[5] Although it is unclear whether Plaintiff's retaliation claim is brought under the ADEA, Title VII, or both, the standard is the same. *See Nance v. NBCUniversal Media, LLC*, Case No. 16-cv-11635, at *5 (N.D. Ill. Apr. 12, 2018) ("The Seventh Circuit generally applies the same prima facie requirements to retaliation claims brought under Title VII, Section 1981, and the ADEA").

**DISCUSSION**

I. **Age and Race Discrimination**

In order to prove intentional race or age discrimination, the tried-and-true method has historically been the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). In *Ortiz v. Werner Enterprises, Inc.*, the Seventh Circuit refined the *McDonnell Douglas* analysis to focus on a more holistic approach of asking "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] . . . caused the discharge or other adverse employment action" at issue. 834 F.3d 760, 765 (7th Cir. 2016).

"Under *Ortiz*, courts assess the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Dirickson v. Intuitive Surgical, Inc.*, Case No. 19-cv-7149, 2023 WL 2138973, at *9 (N.D. Ill. Feb. 20, 2023) (citing *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022)). However, *Ortiz* did not alter or eschew the test articulated in *McDonnell Douglas*, which "remains a useful method to analyze discrimination claims." *Podrebarac v. McDonough*, Case No. 21-cv-2552, 2023 WL 2915405, at *5 (N.D. Ill. Apr. 12, 2023). "Under *Ortiz*, Plaintiff must adduce sufficient evidence for a reasonable jury to conclude that her [protected status] caused an adverse employment action." *Dirickson*, 2023 WL 2138973, at *10. The standard set out in *Ortiz* applies with equal force to Title VII and the ADEA. *See Carson v. Lake Cty., Ind.*, 865 F.3d 526, 533-34 (7th Cir. 2017) (holding an ADEA plaintiff may proceed under the *Ortiz* standard).

When analyzing a discrimination case under the *Ortiz* framework, the Seventh Circuit has "identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people

8

similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). The focus of the inquiry is whether "[t]aken together, [Plaintiff's] evidence would permit a reasonable jury to infer 'an overall likelihood of discrimination' that merits a trial, not summary judgment." *Id*. (quoting *Ortiz*, 834 F.3d at 763). Here, Plaintiff presents her evidence under the *Ortiz* rubric, and thus, the Court analyzes her claims accordingly. *See Dirickson*, 2023 WL 2138973, at *10.

Resolving all factual disputes and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that there is sufficient evidence in the record to allow a reasonable jury to find that Defendant's decision not to promote Plaintiff in June 2017 was based on her age or race. Plaintiff has presented evidence that fits within the second and third categories identified in *Joll*. Plaintiff has demonstrated that May, a younger white man, was treated more favorably than Plaintiff, as he was selected for the promotion Plaintiff applied for despite having significantly less experience than Plaintiff. Moreover, a reasonable juror could infer that May was pre-selected and coached for his interview based on statements by Yenerall and Souder expressing a preference for May in the position. As such, this evidence supports the conclusion that similarly situated people who were not African American and were under 40 years old were treated better than Plaintiff.

In addition, Plaintiff has produced evidence that suggests Defendant presented dishonest justifications for the disparate treatment. Although Defendant insists that it consistently relied on interview scores as the decisive factor for HR Specialist promotions, the record contains evidence of admissions by Souders to Plaintiff and to another employee that he did not want to promote Plaintiff, even though she had the highest score. True, Yenerall was listed as the selecting official, but Plaintiff averred that when she objected to Yenerall about her non-selection, Yenerall said she did whatever Souders told her to do. Both Balas and Hernandez submitted affidavits in response

9

to Plaintiff's EEO complaint showing Plaintiff's final ranking in the interviews was first and May's was fifth.[6] Furthermore, Plaintiff herself claimed that she served on a panel where a white male applicant was selected as a HR Specialist despite not having received the highest score on the performance-based interview questions.

That said, the Court acknowledges that Plaintiff has not pointed to any specific evidence in the record that she was disfavored *because of* her age or race. At most, Plaintiff contends it is suspicious that a candidate outside of her protected categories with significantly less experience was selected for a promotion, but that fact, on its own, is not enough to avoid summary judgment on a claim of intentional discrimination. Defendant has highlighted evidence here that would cut against such a finding. Still, the Court is tasked with determining if a triable issue of fact exists. Although it is a fairly close call, viewing the record as a whole, the Court finds that Plaintiff has adequately demonstrated that the record contains sufficient evidence that a reasonable fact finder could rely on to conclude Plaintiff's age and/or race were the reasons that she was not selected for the promotion in June 2017.

In contrast, Plaintiff has not met her burden with respect to the Supervisory HR Specialist promotion that went to Torey-Lyman in December 2017. The Court notes that in her brief in opposition to the motion for summary judgment, Plaintiff argues only that the non-selection was based on retaliatory animus, not discriminatory animus. In any event, as noted above, Plaintiff relies on nothing more than the selection of a younger, less-experienced employee, which is not enough to defeat summary judgment.

---

[6] The Court acknowledges that Defendant has submitted interview score sheets that contradict this evidence and that it may have been a transposition by Balas and Hernandez when filling out the forms. Nevertheless, the Court must accept the evidence of the nonmovant as true for purposes of summary judgment. Defendant did not clarify the record on this critical point it its reply to summary judgment.

10

Similarly, with respect to Plaintiff's delayed elevation from a GS-9 pay grade to a GS-11, Plaintiff has put forth no evidence of similarly situated employees outside her protected classes who were treated more favorably, or admissible ambiguous or suggestive comments. Although there is some suggestion of possible dishonest employer justifications, as Plaintiff argued that she was put forward for an interview on a GS-11 referral and Defendant did not change her grade to a GS-9 until after she had already been selected for the position, the record does not reflect that those actions were based on disparate treatment. While Defendant may have treated Plaintiff poorly, and even improperly, with regard to her pay grade once she finally attained a promotion, there is nothing here from which a reasonable juror could infer that the reason for that shoddy treatment was Plaintiff's race or age. Plaintiff does not demonstrate that other employees who were younger or a different race were treated differently; indeed, the record is silent regarding the pay grades for other employees or how they were handled following promotion. It might be that Plaintiff was the only VA employee to experience this discrepancy. Still, she has not met her burden of sufficiently developing the record on the issue. Therefore, the Court finds that the only adverse employment action that can proceed on a claim of race or age discrimination is the June 2017 failure to promote.

## II. **Retaliation**

"Title VII prohibits an employer from retaliating against an employee 'because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *Lesiv v. Ill. Central R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (citing *Igasaki v. Illinois Dep't of Financial and Professional Regulation*, 988 F.3d 948, 959 (7th Cir. 2021)). To prevail on her claim, Plaintiff must prove that: 1) she engaged in an activity protected by the statute; 2) she suffered an adverse employment action; and 3) there is a causal link between the protected activity and the adverse action. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018).

To establish causation, Plaintiff must show that retaliatory animus was the but-for cause of her adverse employment action, meaning that it "would not have occurred in the absence of" her protected activity. *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018). "Circumstantial evidence of causation may include '(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.'" *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 937 (7th Cir. 2022) (quoting *Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018)). Retaliation claims may also be considered under the *Ortiz* framework; "[u]ltimately, the inquiry comes down to one question: 'Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused' the materially adverse action?" *Lesiv*, 39 F.4th at 911 (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)).

Because there is no dispute that Plaintiff engaged in protected activity before and after the non-selection decisions and the lateral promotion, or that she was subjected to adverse employment actions, the Court focuses on causation. The record contains sufficient evidence to support a finding that there is a causal link between Plaintiff's protected EEO activity and the decisions not to promote her and then to pay her at a lower grade once she was promoted. For example, the evidence in the record could support an inference that the timing of the decisions to promote other less-experienced individuals over Plaintiff was suspicious. Plaintiff was a long-time employee at Hines who had successfully risen through the ranks from a food service employee all the way to the HR department. In February 2017, she filed an EEO complaint against Souders and was involved in mediation with Souders, who, according to Yenerall, was responsible for May's

promotion a few months later. Plaintiff then filed another EEO complaint against Souders in June 2017, and Souders selected Torey-Lyman for promotion several months later. Although Plaintiff also sought those promotions, Souders chose other significantly less experienced HR employees over her within months of her EEO filings. A reasonable juror could find that her protected activity caused Souders not to promote Plaintiff.

The timing is also suspicious for the delay in Plaintiff's pay raise from a GS-9 to a GS-11. At the time of her promotion, Lara told Plaintiff she would have her pay bumped in 90 days; shortly thereafter, she amended her EEO complaint to include the failure to start her salary at a GS-11, and Lara then told Plaintiff it would be an additional 90 days before her pay raise was processed. That evidence could support a claim of retaliation.

There are also "ambiguous statements" made by Souders and Lara regarding Plaintiff that warrant denial of summary judgment. Plaintiff provided an affidavit from another HR employee who averred that Souders said Plaintiff was "'one of the people' to watch out for." (Dkt. 84-10 at ¶¶ 5), and Souders himself told Plaintiff that he would not promote her. Indeed, when Plaintiff was finally successful and achieved a promotion, Plaintiff averred that Lara told her "[she] was lucky to get selected at all, because Souders was going to deny [her] promotion." (Dkt. 84-2 at ¶ 105). When Souders told Plaintiff that she had been promoted, he made it clear that Lara, not Souders, chose Plaintiff. A reasonable juror could infer that Souders made these comments because of Plaintiff's multiple EEO complaints against him. And neither May nor Torey-Lyman had engaged in protected activity and were promoted, whereas Plaintiff had and was passed over for promotion twice.

Finally, Plaintiff has raised a triable issue of fact on whether the reason offered by Defendant for its failure to promote Plaintiff was pretextual. As noted above, Defendant has

13

primarily focused on the interview scores to show that Plaintiff was not promoted because she was outperformed by other candidates in her responses to performance-based interview questions. However, affidavits from two interview panel members for the HR specialist role reflect that Plaintiff ranked first and Plaintiff's own declaration states that Souders told her she was number one overall. Resolving this factual dispute in Plaintiff's favor, as the Court must on summary judgment, this is evidence that Defendant possibly lied about its reason not to promote Plaintiff, which would show pretext. *See Saxton v. Wolf*, 508 F. Supp. 3d 299, 313 (N.D. Ill. 2020) (citing *Burton v. Bd. or Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017)) ("pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phone reason for some action").

Regarding her pay grade claim, Plaintiff has provided evidence suggesting that she was in fact referred for an interview on a position advertised as starting at a GS-11 pay grade. This tends to show Lara's claim that Plaintiff was actually referred for an interview on a GS-9 position is untrue and pretextual. In *Saxton*, evidence of pretext alone was sufficient for a retaliation claim to survive summary judgment. *Id.* at 313-14. In this case, Plaintiff has adduced evidence that, if taken as true, satisfies all the types of circumstantial evidence that could support a claim for retaliation. As such, triable issues of fact remain for a jury to decide.

## **CONCLUSION**

For all the foregoing reasons, Defendant's motion for summary judgment [71] is denied.

**DATED**: June 17, 2024               **ENTERED**:

                                        _LaShonda A. Hunt_____
                                        LASHONDA A. HUNT
                                        United States District Judge

14